### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| ASCENTIUM CAPITAL LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE NO. 4:21-cv-01235 |
| | ) | |
| NERIDA LLC d/b/a KIBITECH | ) | |
| SOLUTIONS and JOHN DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

COMES NOW Ascentium Capital LLC ("Ascentium"), and files this Complaint against Nerida LLC d/b/a KibiTech Solutions ("KibiTech") and John Does 1-10 ("John Does" and collectively with KibiTech, "Defendants"), respectfully showing as follows:

### PRELIMINARY STATEMENT

Ascentium is the victim of at least four (4) fraudulent equipment financing transactions orchestrated by KibiTech, and potentially others acting in concert with KibiTech. These Defendants deceived Ascentium by representing KibiTech as a legitimate vendor of business equipment, IT management, and IT servicing. In furtherance of their fraudulent scheme, KibiTech preyed on unsophisticated business owners to receive funding from Ascentium. In other instances, on information and belief, KibiTech created fictious businesses to deceive Ascentium and receive funding relating to fake business equipment purchases.

Following default on the Equipment Finance Agreements (as defined below), Ascentium inspected the business locations for certain customers/borrowers and discovered that the offices were unoccupied or non-existent, strongly suggesting that the business equipment was never purchased or

installed at the supposed customer location.

Ascentium brings this action to hold these Defendants accountable and recover its losses relating to their scheme.  Ascentium alleges the following as further support:

## PARTIES, JURISDICTION, AND VENUE

1.     Ascentium is a limited liability company with a primary place of business in Texas.

2.     Ascentium is wholly owned by RF Ascentium, LLC, and RF Ascentium, LLC in turn is wholly owned by Regions Bank.

3.     Regions Bank is an Alabama corporation with its principal place of business in Birmingham, Alabama.

4.     KibiTech is an Arizona limited liability company with a principal place of business at 2942 N 24th Street, Suite 114, Phoenix, Arizona 85016.  KibiTech may be served with process through its registered agent, Victor Donald, at 3201 N 16th Street, Suite 6A, Phoenix, AZ 85016 or wherever he may be located.

5.     On information and belief, James Jones ("Mr. Jones") is the sole member of KibiTech.

6.     On information and belief, James Jones is and was a citizen of the State of Arizona at all time pertinent hereto.

7.     John Does 1-10 are parties who may be subject to liability for claims or debts arising out of or relating to fraudulent conduct and the Equipment Finance Agreements that are the subject matter of this action.

8.     The Defendants in this matter have all worked in concert and conspired to violate the rights of Ascentium as described herein.

9.      Personal jurisdiction exists as to KibiTech, because it regularly conducts business in the State of Texas and, as a result, is subject to the general jurisdiction of this Court. *See Central Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376, 380 (stating, "it is well-established that the Texas long-arm statute authorizes the exercise of personal jurisdiction to the full extent allowed by the Due Process Clause of the Fourteenth Amendment."). Further, KibiTech has sufficient minimum contacts with the State of Texas related to the transactions and events in this specific cause of action also giving rise to specific jurisdiction.

10.     Personal jurisdiction exists as to John Does, because they regularly conduct business in the State of Texas and, as a result, are subject to the general jurisdiction of this Court. *See Central Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376, 380 (stating, "it is well-established that the Texas long-arm statute authorizes the exercise of personal jurisdiction to the full extent allowed by the Due Process Clause of the Fourteenth Amendment."). Further, the John Does had contact with the State of Texas related to the transactions and events in this specific cause of action also giving rise to specific jurisdiction.

11.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as the parties are of diverse citizenship and the amount in controversy exceeds $75,000.00.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to Ascentium's claims have occurred in this judicial district.

## ASCENTIUM'S BUSINESS MODEL

13.     Ascentium is a commercial lender that provides equipment and technology financing solutions for companies ranging in size to family-owned businesses to Fortune 500s.

14.     Among other industries, Ascentium provides financing and leasing options for manufacturers, distributors, resellers, and franchise organizations, as well as direct financing options for small businesses in the United States.

15.     With the typical equipment finance transaction, Ascentium provides funding for some or all of the purchase price of the equipment on credit terms, and Ascentium takes a purchase money security interest in the equipment to secure repayment.

16.     In these equipment finance transactions, Ascentium's collateral is often a significant, if not primary, source of recovery if the customer defaults on the loan.  Accordingly, the availability and value of the collateral is often a critical aspect of Ascentium's lending decisions.

### KIBITECH'S BUSINESS MODEL

17.     KibiTech markets itself as an authorized dealer of D&H, Ingram Micro, Dell, EMC, and Hewlett Packard Enterprise office equipment that helps businesses grow through the use of KibiTech's IT management, small business IT services, network and computer security, and equipment leasing relationships.

18.     According to KibiTech's website, its business has experts that can offer "funding as fast as 48 hours to help you secure the equipment you need for your business."

19.     KibiTech's website also advertises that its "professionals are trained to provide you with FREE business support and all the necessary information need (sic) to help your business remain successful."

20.     KibiTech assists and facilitates financing of KibiTech's recommended products and equipment through equipment finance lenders including, but not limited to, Ascentium.

21.     For each financing transaction: (a) KibiTech assists its customers with the preparation and submission of the financing applications, which lists the customer as the borrower, (b) KibiTech

prepares an invoice itemizing each potential purchase, (c) KibiTech emails the completed financing application and invoice to Ascentium and requests Ascentium's review and approval of the same, (d) KibiTech acts as the liaison between the customer/borrower and Ascentium relating to any financing application questions raised by Ascentium, (e) KibiTech communicates with the customer/borrower as to the approval or rejection decision by Ascentium, and (f) KibiTech assists with the customer/borrower's execution of equipment financing agreements, if the financing transaction is approved by Ascentium.

22.     With the exception of two (2) emails, all e-mail communications from KibiTech to Ascentium were from Mr. Jones, the alleged "Director of Sales" for KibiTech.

23.     Two (2) e-mails to Ascentium were from Greg Thompson, the alleged "IT Advisor" for KibiTech.

**THE FIRST FRAUDULENT TRANSACTION**
**VANGUARD INTERNATIONAL ENGINEERING**

24.     On or about September 24, 2019, KibiTech generated Invoice #17-8094-VIE (the "Vanguard Invoice") for the purported purchase of various office-related equipment and software totaling $35,979.26 (the "Vanguard Equipment") by customer Vanguard International Engineering ("Vanguard").  A true and correct copy of the Vanguard Invoice is attached hereto as **Exhibit A** and incorporated herein.

25.     On information and belief, Vanguard is a fictitious business.

26.     On September 30, 2019, Mr. Jones emailed a credit application for customer/borrower Vanguard to Ascentium (the "Vanguard Credit Application Email").  A true and correct copy of the Vanguard Credit Application Email and attachment are attached hereto as **Exhibit B** and incorporated herein.

27.     On October 2, 2019, Mr. Jones emailed the Vanguard Invoice to Ascentium (the "Vanguard Invoice Email"), wherein KibiTech requested funding equivalent to the amount identified in the Vanguard Invoice for the purported purchase of the Vanguard Equipment.  A true and correct copy of the Vanguard Invoice Email is attached hereto as **Exhibit C** and incorporated herein.

28.     In furtherance of the KibiTech's funding request for the Vanguard Equipment, Mr. Jones emailed funding instructions (the "Funding Instructions Email") to Ascentium on October 3, 2019.   A true and correct copy of the Funding Instructions Email and attachments are attached hereto as **Exhibit D** and incorporated herein.

29.     In reliance on, among other things, the Vanguard Credit Application Email, the Vanguard Invoice Email, the Vanguard Invoice, the Funding Instructions Email, and KibiTech's representations as to the legitimacy of its business and its purported customer, Ascentium approved the funding request for the Vanguard Invoice.

30.     On October 2, 2019, Ascentium sent Vanguard: (i) a notice of its approval of the Vanguard Credit Application (the "Vanguard Credit Application Approval Notice"), and (ii) Equipment Finance Agreement No. 2400610 (the "Vanguard EFA") documenting the terms in which Ascentium would finance Vanguard's purchase the Vanguard Equipment.  A true and correct copy of the Vanguard Credit Application Approval Notice and the Vanguard EFA are attached hereto as **Exhibits E** and **F**, respectively, and incorporated herein.

31.     On October 2, 2019, Mary Woeste, as Corporate Secretary and President of Vanguard, executed the Vanguard EFA.

32.     Ascentium transferred $35,979.26 to KibiTech (the "Vanguard-KibiTech Funding") to pay the Vanguard Invoice on Vanguard's behalf as evidenced by the Payment Notification dated

October 7, 2019 (the "Vanguard Funding Confirmation"). A true and correct copy of the Vanguard Funding Confirmation is attached hereto as **Exhibit G** and incorporated herein.

33.     On October 2, 2019, "Mary Woeste" represented to Ascentium that the Vanguard Equipment had been "delivered to, and received by" Vanguard in a Delivery and Acceptance Certificate (the "Vanguard Delivery and Acceptance Certificate"). A true and correct copy of the Vanguard Delivery and Acceptance Certificate is attached hereto as **Exhibit H** and incorporated herein.

34.     Thereafter, on October 7, 2019, "Mary Woeste" also verbally represented to Ascentium that Vanguard Equipment was received on October 1, 2019.

## THE SECOND FRAUDULENT TRANSACTION
## VENTURA TAX PREPARATION CORP

35.     On December 17, 2019, Mr. Jones emailed a credit application for customer/borrower Ventura Tax Preparation Corp ("Ventura") to Ascentium (the "Ventura Credit Application Email"). A true and correct copy of the Ventura Credit Application Email and attachment are attached hereto as **Exhibit I** and incorporated herein.

36.     On or about December 18, 2019, KibiTech generated Invoice #21-1981-VTPC (the "Ventura Invoice") for the purchase of various office-related equipment and software totaling $30,000.00 (the "Ventura Equipment") by Ventura. A true and correct copy of the Ventura Invoice is attached hereto as **Exhibit J** and incorporated herein.

37.     On December 18, 2019, James Jones emailed the Ventura Invoice to Ascentium (the "Ventura Invoice Email"), wherein KibiTech requested funding equivalent to the amount identified in the Ventura Invoice for the purported purchase of the Ventura Equipment. A true and correct copy of the Ventura Invoice Email is attached hereto as **Exhibit K** and incorporated herein.

38.     In reliance on, among other things, the Ventura Credit Application Email, the Ventura Invoice Email, the Ventura Invoice, the Funding Instructions Email previously provided to Ascentium, and KibiTech's representations as to the legitimacy of its business, Ascentium approved the funding request for the Ventura Invoice.

39.     On December 19, 2019, Ascentium sent Ventura: (i) a notice of its approval of the Ventura Credit Application (the "Ventura Credit Application Approval Notice"), and (ii) Equipment Finance Agreement No. 2413795 (the "Ventura EFA") documenting the terms in which Ascentium would finance Ventura's purchase of the Ventura Equipment.  A true and correct copy of the Ventura Credit Application Approval Notice and the Ventura EFA are attached hereto as **Exhibits L** and **M**, respectively, and incorporated herein.

40.     On December 19, 2019, Ismael Ventura ("Mr. Ventura"), as President of Ventura, allegedly executed the Ventura EFA from an IP address located in Philadelphia, Pennsylvania.

41.     On information and belief, Mr. Ventura resides in New York and operates Ventura from a storefront located in Bronx, New York.

42.     Ascentium transferred $30,000.00 to KibiTech (the "Ventura-KibiTech Funding") to pay the Ventura Invoice on Ventura's behalf as evidenced by the Payment Notification dated December 20, 2019 (the "Ventura Funding Confirmation").  A true and correct copy of the Ventura Funding Confirmation is attached hereto as **Exhibit N** and incorporated herein.

### THE THIRD FRAUDULENT TRANSACTION
### SUNSET CONNECTIONS LLC

43.     On or about December 18, 2019, KibiTech generated Invoice #22-1357-SC (the "Sunset Connections Invoice") for the purchase of various office-related equipment and software totaling $25,850.26 (the "Sunset Connections Equipment") by customer Sunset Connections LLC

("Sunset Connections").  A true and correct copy of the Sunset Connections Invoice is attached hereto as **Exhibit O** and incorporated herein.

44.     On information and belief, Sunset Connections is a fictitious business.

45.     On December 20, 2019, Mr. Jones emailed a credit application for customer/borrower Sunset Connections to Ascentium (the "Sunset Connections Credit Application Email").  A true and correct copy of the Sunset Connections Credit Application Email and attachment are attached hereto as **Exhibit P** and incorporated herein.

46.     On December 30, 2019, Mr. Jones emailed the Sunset Connections Invoice to Ascentium (the "Sunset Connections Invoice Email"), wherein KibiTech requested funding equivalent to the amount identified in the Sunset Connections Invoice for the purported purchase of the Sunset Connections Equipment.  A true and correct copy of the Sunset Connections Invoice Email is attached hereto as **Exhibit Q** and incorporated herein.

47.     In reliance on, among other things, Sunset Connections Credit Application Email, the Sunset Connections Email, the Sunset Connections Invoice, the Funding Instructions Email previously provided to Ascentium, and KibiTech's representations as to the legitimacy of its business and its purported customer, Ascentium approved the funding request for the Sunset Connections Invoice.

48.     On December 31, 2019, Ascentium sent Sunset Connections: (i) a notice of its approval of the Sunset Connections Credit Application (the "Sunset Connections Credit Application Approval Notice"), and (ii) Equipment Finance Agreement No. 2414482 (the "Sunset Connections EFA") documenting the terms in which Ascentium would finance Sunset Connections' purchase of the Sunset Connections Equipment.  A true and correct copy of the Sunset Connections Credit

Application Approval Notice and the Sunset Connections EFA are attached hereto as **Exhibits R** and **S**, respectively, and incorporated herein.

49.     On December 31, 2019, Christopher Abernathy, as President of Sunset Connections, purportedly electronically executed the Sunset Connections EFA.

50.     Ascentium transferred $25,850.26 to KibiTech (the "Sunset Connections-KibiTech Funding") to pay the Sunset Connections Invoice on Sunset Connections's behalf as evidenced by the Payment Notification dated January 3, 2020 (the "Sunset Connections Funding Confirmation"). A true and correct copy of the Sunset Connections Funding Confirmation is attached hereto as **Exhibit T** and incorporated herein.

### THE FOURTH FRAUDULENT TRANSACTION
### MELANIA HAIR DESIGN II LLC

51.     On February 5, 2019, Mr. Jones emailed a credit application for customer/borrower Melania Hair Design II LLC ("Melania Hair Design" and together with Vanguard, Ventura, and Sunset Connections, collectively "KibiTech's Customers" or "Ascentium's Borrowers") to Ascentium (the "Melania Hair Design Credit Application Email").  A true and correct copy of the Melania Hair Design Credit Application Email and attachment are attached hereto as **Exhibit U** and incorporated herein.

52.     On or about February 6, 2020, KibiTech generated Invoice #37-8497-MDH (the "Melania Hair Design Invoice" and together with the Vanguard Invoice, the Ventura Invoice, and the Sunset Connections Invoice, collectively the "KibiTech Invoices") for the purchase of various office-related equipment and software totaling $24,989.23 (the "Melania Hair Design Equipment" and together with the Vanguard Equipment, the Ventura Equipment, and the Sunset Connections Equipment, collectively the "KibiTech Equipment") by customer Melania Hair.  A true and correct copy of the Melania Hair Design Invoice is attached hereto as **Exhibit V** and incorporated herein.

53.     On February 6, 2020, Mr. Jones emailed the Melania Hair Design Invoice to Ascentium (the "Melania Hair Design Invoice Email"), wherein KibiTech requested funding equivalent to the amount identified in the Melania Hair Design Invoice for the purported purchase of the Melania Hair Design Equipment.  A true and correct copy of the Melania Hair Design Invoice Email is attached hereto as **Exhibit W** and incorporated herein.

54.     In reliance on, among other things, the Melania Hair Design Credit Application Email, the Melania Hair Design Invoice Email, the Melania Hair Invoice, the Funding Instructions Email previously provided to Ascentium, and KibiTech's representations as to the legitimacy of its business and its purported customer, Ascentium approved the funding request for the Melania Hair Design Invoice.

55.     On February 6, 2020, Ascentium sent Melania Hair Design: (i) a notice of its approval of the Melania Hair Design Credit Application (the "Melania Hair Design Credit Approval Notice"), and (ii) Equipment Finance Agreement No. 2421168 (the "Melania Hair Design EFA" and together with the Vanguard EFA and the Ventura EFA, collectively the "Equipment Finance Agreements") documenting the terms in which Ascentium would finance Melania Hair Design's purchase of the Melania Hair Design Equipment.  A true and correct copy of the Melania Hair Design Credit Application Approval Notice and the Melania Hair Design EFA are attached hereto as **Exhibits X** and **Y**, respectively, incorporated herein.

56.     On February 6, 2020, Melania Guzman, as President of Melania Hair Design, purportedly electronically executed the Melania Hair Design EFA.

57.     Ascentium transferred $24,989.23 to KibiTech (the "Melania Hair Design -KibiTech Funding") to pay the Melania Hair Design Invoice on Melania Hair Design's behalf as evidenced by the Payment Notification dated February 14, 2020 (the "Melania Hair Design Funding

Confirmation").  A true and correct copy of the Melania Hair Design Funding Confirmation is attached hereto as **Exhibit Z** and incorporated herein.

**THE PAYMENT DEFAULTS AND**
**SUBSEQUENT IDENTIFICATION OF NON-EXISTENT COLLATERAL**

**A.    VANGUARD INTERNATIONAL ENGINEERING**

58.    As consideration for the Vanguard-KibiTech Funding, Vanguard contractually agreed to make certain specified monthly payments to Ascentium and granted Ascentium a security interest in the Vanguard Equipment purchased from KibiTech.

59.    More specifically, out of the sixty (60) required payments of $761.19, Vanguard only made four (4) valid payments.

60.    Vanguard made seven (7) additional payments to Ascentium, but each of those payments was reversed based on insufficient funds.

61.    As a result of Vanguard's default, Ascentium accelerated the balance due under the Vanguard EFA, made demand on Vanguard for immediate payment of the accelerated balance, and made demand for return of the Vanguard Equipment purchased through KibiTech.

62.    As of April 7, 2021, Vanguard remains in default.

63.    As a result of Vanguard's default, Ascentium performed a collateral inspection to inspect the Vanguard Equipment.

64.    On October 13, 2020, an agent for Ascentium was advised by Brian Rhoden (an alleged employee, owner, or agent of Vanguard) that the Vanguard Equipment was moved to a storage unit.

65.    To date, Ascentium has not been able to verify the existence of the Vanguard Equipment or a legitimate business location for Vanguard.

66.     On information and belief, KibiTech neither purchased nor delivered the Vanguard Equipment for its alleged customer Vanguard.

67.     On January 19, 2021, Ascentium sent a written request to KibiTech requesting copies of all shipping and delivery records in reference to the Vanguard Invoice, the Vanguard Equipment, and the Vanguard-KibiTech Funding (the "Records Request Letter").  A true and correct copy of the Records Request Letter is attached hereto as **Exhibit AA** and incorporated herein.

68.     KibiTech did not respond to the Records Request Letter and has not, to date, provided any documentation verifying the purchase or delivery of the Vanguard Equipment.

**B.     VENTURA TAX PREPARATION CORP**

69.     As consideration for the Ventura-KibiTech Funding, Ventura contractually agreed to make certain specified monthly payments to Ascentium and granted Ascentium a security interest in the Ventura Equipment purchased from KibiTech.

70.     More specifically, out of the sixty (60) required payments of $700.13, Ventura only made seven (7) valid payments.

71.     Ventura made three (3) additional payments to Ascentium, but each of those payments was reversed based on insufficient funds.

72.     As a result of Ventura's default, Ascentium accelerated the balance due under the Ventura EFA, made demand on Ventura for immediate payment of the accelerated balance, and made demand for return of the Ventura Equipment purchased through KibiTech.

73.     As of April 7, 2021, Ventura remains in default.

74.     As a result of Ventura's default and Ascentium's subsequent investigation into the matter, Ascentium uncovered that Ventura contends the Ascentium transaction was fraudulent.

75.     The Records Request Letter also requested that KibiTech provide copies of all shipping and delivery records in reference to the Ventura Invoice, the Ventura Equipment, and the Ventura-KibiTech Funding.

76.     KibiTech did not respond to the Records Request Letter and has not, to date, provided any documentation verifying the purchase or delivery of the Ventura Equipment.

## C.     SUNSET CONNECTIONS

77.     As consideration for the Sunset Connections-KibiTech Funding, Sunset Connections contractually agreed to make certain specified monthly payments to Ascentium and granted Ascentium a security interest in the Sunset Connections Equipment purchased from KibiTech.

78.     More specifically, out of the sixty (60) required payments of $557.41 Sunset Connections only made seven (7) valid payments.

79.     Sunset Connections made an additional payment to Ascentium, but that payment was reversed based on insufficient funds.

80.     Sunset Connections is also currently in the process of disputing four (4) additional payments and requesting to those payments with Ascentium and its banking institution.

81.     As a result of Sunset Connections' default, Ascentium accelerated the balance due under the Sunset Connections EFA, made demand on Sunset Connections for immediate payment of the accelerated balance, and made demand for return of the Sunset Connections Equipment purchased through KibiTech.

82.     As of April 7, 2021, Sunset Connections remains in default.

83.     Ascentium performed a collateral inspection to inspect the Sunset Connections Equipment and discovered that Sunset Connections' business address was not legitimate.  Occupants

of the office building had no knowledge of Sunset Connections, and there was no visible signage relating to Sunset Connections.

84.     On information and belief, KibiTech neither purchased nor delivered the Sunset Connections Equipment for its alleged customer Sunset Connections.

85.     The Records Request Letter also requested that KibiTech provide copies of all shipping and delivery records in reference to the Sunset Connections Invoice, the Sunset Connections Equipment, and the Sunset Connections -KibiTech Funding.

86.     KibiTech did not respond to the Records Request Letter and has not, to date, provided any documentation verifying the purchase or delivery of the Sunset Connections Equipment.

**D.     MELANIA HAIR DESIGN**

87.     As consideration for Melania Hair Design-KibiTech Funding, Melania Hair Design contractually agreed to make certain specified monthly payments to Ascentium and granted Ascentium a security interest in the Melania Hair Design Equipment purchased from KibiTech.

88.     More specifically, out of the three (3) required payments of $29.00 and fifty-seven (57) required payments of $585.78, Melania Hair Design only made the three (3) required payments of $29.00 and two (2) valid payments of $585.78.

89.     Melania Hair Design made two (2) additional payments of $585.78 to Ascentium, but each of those payments was reversed based on insufficient funds.

90.     As a result of Melania Hair Design's default, Ascentium accelerated the balance due under the Melania Hair Design EFA, made demand on Melania Hair Design for immediate payment of the accelerated balance, and made demand for return of the Melania Hair Design Equipment purchased through KibiTech.

91.     As of April 7, 2021, Melania Hair Design remains in default.

92.     Following the default, Melania Guzman, President of Melania Hair Design executed an Affidavit of Forgery testifying, among other things, that "James Jones promised to my husband [ ] he going (sic) to fix his personal credit and the business credit line and get a credit card only for the business, but he never don't (sic) and my husband told him stop do it (sic) business on behalf of the company and he said don't worry, everything happen he will take care (sic)" (the "Guzman Affidavit").  A true and correct copy of the Guzman Affidavit is attached hereto as **Exhibit BB** and incorporated herein.

93.     On information and belief, KibiTech neither purchased nor delivered the Melania Hair Design Equipment for its customer Melania Hair Design.

94.     The Records Request Letter from Ascentium also requested that KibiTech provide copies of all shipping and delivery records in reference to the Ventura Invoice, the Ventura Equipment, and the Ventura-KibiTech Funding.

95.     KibiTech did not respond to the Records Request Letter and has not, to date, provided any documentation verifying the purchase or delivery of the Ventura Equipment.

## COUNT I
## FRAUD

96.     Ascentium restates and incorporates the allegations in the preceding paragraphs of this complaint as if fully set forth herein.

97.     Defendants, acting independently and as part of a conspiracy, made numerous affirmative, material, false representations including, but not limited to:

   a.     The legitimacy of KibiTech's business operations;

   b.     The legitimacy of KibiTech's Customers' and KibiTech's Customers' operations;

   c.     The legitimacy of KibiTech's Customers' financing needs for the purchase of various office related equipment;

      d.      The legitimacy of the KibiTech Invoices; and

      e.      The legitimacy of communications between KibiTech and KibiTech's Customers.

98.     Defendants knew the representations were false or made the representations recklessly and without knowledge of their truth.

99.     Defendants made the representations with the intent to deceive Ascentium into thinking that KibiTech, among other things: (i) operated a legitimate equipment and IT business that sourced business equipment and assisted with IT operations, and (ii) would purchase and the deliver the KibiTech Equipment to KibiTech's Customers.

100.    Ascentium relied on Defendants' representations.

101.    Ascentium has sustained significant damages based on the false representations by Defendants.  Among other things, the false representations: (1) deceived Ascentium into approving and providing $116,818.75 in funding; (2) deceived Ascentium into believing that the Equipment Finance Agreements were secured by valuable collateral, worth approximately $116,818.75; (3) caused Ascentium to incur significant internal collection costs; and (4) caused Ascentium to incur significant attorneys' fees and costs.

102.    The total damages incurred by Ascentium as a result of Defendants' fraud will be demonstrated at trial.

## COUNT II
## FRAUD IN THE INDUCEMENT

103.    Ascentium restates and incorporates the allegations in paragraphs 1 through 95 of this complaint as if fully set forth herein.

104.    Defendants, acting independently and as part of a conspiracy, made numerous affirmative, material, false representations including, but not limited to:

    a.      The legitimacy of KibiTech's business operations;

    b.      The legitimacy of KibiTech's Customers' and KibiTech's Customers' operations;

    c.      The legitimacy of KibiTech's Customers' financing needs for the purchase of various office related equipment;

    d.      The legitimacy of the KibiTech Invoices; and

    e.      The legitimacy of communications between KibiTech and KibiTech's Customers.

105. Defendants knew the representations were false or made the representations recklessly and without knowledge of their truth.

106. Defendants made the representations with the intent to deceive Ascentium into thinking that KibiTech, among other things: (i) operated a legitimate equipment and IT business that sourced business equipment and assisted with IT operations, and (ii) would purchase and the deliver the KibiTech Equipment to KibiTech's Customers.

107. Ascentium relied on Defendants' representations.

108. Ascentium has sustained significant damages based on the false representations by Defendants. Among other things, the false representations: (1) deceived Ascentium into approving and providing $116,818.75 in funding; (2) deceived Ascentium into believing that the Equipment Finance Agreements were secured by valuable collateral, worth approximately $116,818.75; (3) caused Ascentium to incur significant internal collection costs; and (4) caused Ascentium to incur significant attorneys' fees and costs.

109. The total damages incurred by Ascentium as a result of Defendants' fraud in the inducement will be demonstrated at trial.

## COUNT III
## <u>NEGLIGENT MISREPRESENTATION</u>

110.     Ascentium restates and incorporates the allegations in paragraphs 1 through 95 of this complaint as if fully set forth herein.

111.     Defendants, acting independently and as part of a conspiracy, made numerous false representations during the Vanguard, Ventura, Sunset Connections, and Melania Hair transactions with Ascentium including, but not limited to:

> a.     The legitimacy of KibiTech's business operations;
>
> b.     The legitimacy of KibiTech's Customers' and KibiTech's Customers' operations;
>
> c.     The legitimacy of KibiTech's Customers' financing needs for the purchase of various office related equipment;
>
> d.     The legitimacy of the KibiTech Invoices; and
>
> e.     The legitimacy of communications between KibiTech and KibiTech's Customers.

112.     Defendants had a pecuniary interest in the Equipment Finance Agreements.

113.     Defendants supplied the false information during the course of its purported business operations.

114.     Defendants failed to exercise reasonable care or competence in communicating the false representations.

115.     Ascentium justifiably relied on the Defendants' false representations.

116.     Ascentium has sustained significant pecuniary damages based on the false representations by Defendants.   Among other things, the false representations: (1) deceived Ascentium into approving and providing $116,818.75 in funding; (2) deceived Ascentium into believing that the Equipment Finance Agreements were secured by valuable collateral, worth

approximately $116,818.75; (3) caused Ascentium to incur significant internal collection costs; and (4) caused Ascentium to incur significant attorneys' fees and costs.

117.     The total damages incurred by Ascentium as a result of Defendants' negligent and false representations will be demonstrated at trial.

**COUNT IV**
**MONEY HAD AND RECEIVED / UNJUST ENRICHMENT**

118.     Ascentium restates and incorporates the allegations in paragraphs 1 through 95 of this complaint as if fully set forth herein.

119.     From October 2019 through February 2020, Defendants received $116,818.75 pursuant to the Equipment Finance Agreements and KibiTech Invoices.

120.     Defendants knew of or accepted and appreciated the benefit of the $116,818.75 in funding.

121.     Defendants failed to purchase and/or deliver the KibiTech Equipment outlined in the KibiTech Invoices, which was to be the collateral securing the Equipment Finance Agreements. Under the circumstances, it would be inequitable for Defendants to retain the benefits conferred without compensating Ascentium.

122.     As such, Defendants are liable to Ascentium for unjust enrichment and/or money had and received in an amount to be demonstrated at trial.

**WHEREFORE**, having stated its complaint against these Defendants, Ascentium requests the following relief in this action:

A.     Under Count One, for judgment against these Defendants, joint and several, for compensatory damages in an amount to be proven at trial;

B.      Under Count Two, for judgment against these Defendants, joint and several, for compensatory damages in an amount to be proven at trial;

C.      Under Count Three, for judgment against these Defendants, joint and several, for compensatory damages in an amount to be proven at trial;

D.      Under Count Four, for judgment against these Defendants, joint and several, for compensatory damages in an amount to be proven at trial;

E.      For an order awarding Ascentium pre-judgment and post-judgment interest;

F.      For an order awarding Ascentium reasonable attorneys' fees and costs of suit, including expert witness fees, and

G.      Under all Counts, for such other and further legal and equitable relief that the Court deems just and appropriate.

Respectfully submitted,

By: */s/ Valerie Henderson*
**Valerie Henderson**
Texas Bar No. 24078655
Federal ID No. 1392550
**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.**
1301 McKinney Street, Suite 3700
Houston, Texas 77010
(713) 650-9700 – Telephone
(713) 650-9701 – Facsimile
vhenderson@bakerdonelson.com

***Counsel for Plaintiff***